[No. 7238–2–I.   Division One.   June 9, 1980.]

McDONALD INDUSTRIES, INC., ET AL, *Appellants,* v. ROLLINS LEASING CORPORATION, ET AL, *Respondents.*

*R. Scott Fallon,* for appellants.

*Robert O. Wells, Jr., Moriarty, Mikkelborg, Broz, Wells & Fryer, Robert Kuvara,* and *Kuvara & Levinson,* for respondents.

RINGOLD, J.—This is an action to determine coverage of an insurance policy.

McDonald Industries rented a tractor/truck from Rollins Leasing Corporation. The rental agreement provided that Rollins would be responsible for liability "arising from the ownership, maintenance or use" of the rented vehicle. The reverse side of the rental agreement excluded coverage for liability arising from "the loading or unloading" of the rental vehicle.

The tractor/truck was used to pull a flatbed trailer, owned by McDonald, carrying an 11-ton counterweight. On July 28, 1977, the counterweight came off the trailer while it was being driven at 40 mph through an S-curve. Two vehicles collided with the weight resulting in three separate bodily injury claims. The weight had been improperly secured on the flatbed.

The trial court held that the accident did not arise from the "ownership, maintenance or use" of the rental vehicle but rather arose from the loading and was therefore excluded from coverage by the "loading and unloading" exclusion clause of the rental agreement.

## "Ownership, Maintenance or Use" Clause

The first issue is whether the accident arose from the "ownership, maintenance or use" of the rental vehicle.

McDonald argues that the accident arose from the "use" of the tractor/truck because it was being used as intended when the accident happened and the use "contributed in some fashion" to the accident. *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.,* 14 Wn. App. 541, 543 P.2d 645 (1975); *Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 593 P.2d 156 (1979). Rollins argues that the cause of the accident was the faulty loading of the counterweight and, that the truck was merely the "situs" of a supervening act of negligence in loading. *Handley v. Oakley,* 10 Wn.2d 396, 116 P.2d 833 (1941).

■ This court has recently considered the question of when, for purposes of insurance coverage, a person can be said to be "using" a motor vehicle. *Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 585 P.2d 157 (1978). Although *Rau* involved uninsured motorist coverage rather than liability coverage, it dealt with the question of whether the injuries arose out of the use of the insured vehicle. *Rau* discusses, in detail, several analogous cases, *Hartford Accident & Indem. Co. v. Booker,* 140 Ga. App. 3, 230 S.E.2d 70 (1976); *Federated Mut. Implement & Hardware Ins. Co. v. Gupton,* 241 F. Supp. 509 (E.D.S.C. 1965); *Owens v. Ocean Accident & Guarantee Corp.,* 194 Ark. 817, 109 S.W.2d 928 (1937); and concludes that whether a person can be considered as "using" a motor vehicle

> depends on the factual context of each case provided, however, that at least the following four criteria are met as of the time of the injury: (1) there must be a causal relation or connection between the injury and the use of the insured vehicle . . .; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

(Citations omitted.) *Rau v. Liberty Mut. Ins. Co., supra* at 334. Under these criteria a motor vehicle is being used when a garbage man is walking down the side of the road to collect a garbage container to load onto his garbage truck, *Hartford Accident & Indem. Co. v. Booker, supra;* or when a service station employee is putting gasoline from his service station truck into a disabled vehicle, *Federated Mut. Implement & Hardware Ins. Co., supra;* or when a patient is being carried on a stretcher to an ambulance. *Owens v. Ocean Accident & Guarantee Corp., supra.* these cases, cited with approval in *Rau,* establish that one can be "using" a motor vehicle even though he may be outside the vehicle and involved in the loading or unloading process.

Applying the *Rau* criteria here, McDonald was "using" the truck both at the time of the accident and when the counterweight was being loaded onto the stationary trailer. The accident, therefore, arose from the "ownership, maintenance or use" of the insured vehicle unless the policy can be construed as excluding coverage.

## EXCLUSIONARY CLAUSE

The next issue is whether the "loading and unloading" clause excludes coverage for this accident.

McDonald argues that the exclusionary clause should have been narrowly construed. Rollins argues that the "complete operation" doctrine was applied to a "loading and unloading" clause in *Aetna Ins. Co. v. Kent,* 85 Wn.2d 942, 540 P.2d 1383 (1975) and that the clause requires the same construction whether used to extend or to exclude coverage.

> Under the "complete operation" doctrine, loading and unloading are interpreted as involving the entire process involved in the movement of the articles from the place where the insured finds them to the place where the insured turns them over to the one to whom they are to be delivered.

*Aetna Ins. Co. v. Kent, supra* at 946. Under such a broad definition, this clause would exclude coverage for almost any accident involving the loading, carriage and delivery of

goods. We do not read the Supreme Court decision in *Aetna Ins. Co. v. Kent, supra,* to mandate such a result.

■■ There are certain general rules with regard to interpretation of insurance policies: (1) Exclusionary clauses are to be strictly construed against the insurer and in favor of the insured; (2) if a clause can be construed in two ways, one favorable to the insured and the other favorable to the insurer, the construction favoring the insured must be adopted; (3) the language of insurance policies is to be interpreted as it would be understood by the average man. *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 517 P.2d 966 (1974).

With regard to "loading and unloading" clauses, the impact of these rules on automobile liability insurance policies is noted in 7 Am. Jur. 2d *Automobile Insurance* § 87, at 392–93 (1963):

> In this latter respect, therefore, it is well to bear in mind the difference between a clause which *includes,* and one which *excludes,* "loading and unloading" within or from the coverage of the policy. The phrase "including the loading or unloading" has generally been recognized to be one of extension, expanding the expression "use of the truck" beyond its connotation otherwise and covering operations or acts in which the movement of the truck itself does not play a part, while the phrase "excepting therefrom loading and unloading" is a phrase of limitation and holds the word "use" to a narrow construction, excluding liabilities from acts in which the truck is not directly connected with the process from which the accident resulted.

We believe this correctly states the rule and we reject Rollins' contention that "loading and unloading" must have the same meaning in an inclusionary clause as in an exclusionary clause. All parts of an insurance policy must, if possible, be harmonized and given effect. *Miller v. Penn Mut. Life Ins. Co.,* 189 Wash. 269, 64 P.2d 1050 (1937). The clause "including liability arising from the loading and unloading" would be superfluous if it did not extend coverage beyond that ordinarily provided by an "ownership,

maintenance or use" clause. Similarly a clause that excludes "liability arising from loading and unloading" would be meaningless if it did not reduce coverage from that ordinarily provided by "ownership, maintenance or use." In order to be given effect, the former must refer to that part of "loading and unloading" which is not normally encompassed by "use" while the latter must refer to a part of "loading and unloading" which is part of "use."

Applying the above reasoning to the case at hand the phrase "loading and unloading" is susceptible to more than one interpretation. We must, therefore, interpret the language as the average man would understand it and we must adopt the construction which favors the insured. *Dairyland Ins. Co. v. Ward, supra.* The average man could understand "loading" to cease when the item to be moved has been placed on the truck and the truck begins to move. Likewise "unloading" could be understood to begin when the truck has arrived at its destination and preparations for unloading have begun. We are compelled to interpret this clause as not excluding coverage for negligence in loading which results in an accident at a time other than during the actual loading or unloading process. *See Aetna Ins. Co. v. Kent,* 12 Wn. App. 442, 451–52, 530 P.2d 672, *rev'd on other grounds,* 85 Wn.2d 942, 540 P.2d 1383 (1975).

We believe the proper construction of this clause is set forth in this court's opinion, written by Callow, J., in *Aetna Ins. Co. v. Kent, supra.* The validity of that analysis was not affected by the Supreme Court's subsequent reversal. The Supreme Court did not say that "loading and unloading" should not be given a narrow construction, rather, it held that because the intent of the parties was clear there was no room for construction.

> The Court of Appeals held these doctrines applied only to policies covering loading and unloading but did not apply to policies which excluded coverage from loading and unloading.
> The rule of strict construction of exclusions contained in an insurance policy is merely an aid at arriving at the

intention of the parties to that policy. It is not intended that the rule should be applied to override the otherwise apparent clear intention of the parties.

*Aetna Ins. Co. v. Kent, supra* at 946. The Supreme Court relied on the fact that (1) both policies were by Aetna; (2) the auto policy, which included loading and unloading, had a premium of $1,200; (3) the other policy which excluded loading and unloading, was *not* an auto policy but a general liability policy with higher dollar limits but a much lower premium of $47. We have construed the exclusionary clause because the clear intention of the parties, found by the Supreme Court in *Aetna Ins. Co. v. Kent, supra,* is not present in our case.

The accident arose from the use of the vehicle. It did not occur during the "loading and unloading" process. The judgment of the trial court is reversed.

SWANSON and DURHAM–DIVELBISS, JJ., concur.

Reconsideration denied July 9, 1980.

Review granted by Supreme Court September 19, 1980.